IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM SCOTT SANDUSKY,** | : | Civil No. 1:13-CV-2507 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Conner)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **COUNTY OF ADAMS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

**I.    Statement of Facts and of the Case**

This is an employment discrimination action brought by a former Adams County Assistant Public Defender, William Sandusky, against his prior employer, the County of Adams, and four individual defendants, individual defendants who include three county commissioners[1] along with the Adams County Public Defender, Kristin Rice. (Doc. 1) In his complaint Sandusky alleges that the defendants engaged in acts of age discrimination against him in violation of the Age Discrimination in Employment Act, (ADEA), 29 U.S.C. §621, and the Pennsylvania Human Relations Act, 43 Pa.C.S. §951. (Id.)  With respect to these claims the well-pleaded facts set forth in Sandusky's complaint recite as follows:

---

[1] Randy Phiel, Jim Martin and Marty Karsteter Qually.

The plaintiff, William Sandusky, is an attorney who was born in 1956, and was in his 50's at the time of the events set forth in this complaint. (Id., ¶22.) In June of 2011, Sandusky and defendant Rice, an Assistant Public Defender, both applied for the position of Public Defender for Adams County. (Id.,¶16.) After an in depth interview process, defendant Rice was selected by the county commissioners to serve as Public Defender, but Sandusky was offered the position of Assistant Public Defender that had become vacant with Rice's promotion to the post of Public Defender. (Id.,¶¶16-18.) Sandusky accepted this job offer and commenced employment as an Assistant Public Defender on June 28, 2011. (Id., ¶18.) At the time Sandusky began his employment with the Public Defender's office, a recent law school graduate, Sean Mott, who was 26 years old in January 2012, was also working as an intern in the office. (Id., ¶¶ 19-21.)

Following his appointment as an assistant Public Defender Sandusky and Rice had a series of discussions and disputes relating to a capital murder case which had previously been assigned to Rice for trial. (Id., ¶¶24-34.) These discussions culminated with Rice notifying Sandusky on December 29, 2011, that she was reassigning the case to him, over his objections. (Id., ¶¶ 32-34.)

In January, 2012, three newly elected county commissioners, defendants Phiel, Martin and Karsteter Qually, commenced their terms of office. (Id., ¶36.) According

to Sandusky, on January 12, 2012, in one of their first acts these newly elected commissioners appointed Mott, the youthful Public Defender Office intern, to a one year term position as an Assistant Public Defender. (Id.) The following day, January 13, 2012, Sandusky alleges that he was summoned to a meeting with defendant Rice and the Adams County Human Resources Director to conduct a six month employment evaluation of the plaintiff. (Id., ¶37.) Sandusky further avers that "[a]lthough plaintiff did not use profanity, did not make any threats, was not violent, did not display wanton conduct, did not shout, did not make any inappropriate sexual or other comments, and was invited to ask questions and make comments, plaintiff was terminated from employment on January 17, 2012, . . . allegedly due to plaintiff's statements made at the January 13th evaluation." (Id., ¶ 38.) Sandusky then alleges that at the very next Adam County Commissioners meeting following his termination, Mott, who was 20 years Sandusky's junior, was appointed to fill the vacancy created by Sandusky's termination. (Id., ¶39.) Contending that this case reassignment, unfavorable evaluation, and termination decision were all pretextual, and were designed to disguise a plan to terminate Sandusky due to his age and replace him with Mott, who was 20 years younger than the plaintiff, Sandusky's complaint brings claims against his former employer, Adams County, and these four individual defendants under both the Age Discrimination in Employment Act, 29 U.S.C. §621,

and the Pennsylvania Human Relations Act, 43 Pa.C.S. §951. (Id., ¶¶40-44.)

The defendants have now moved to dismiss this complaint. (Doc. 3) In their motion, the defendants advance two claims. First, the defendants assert that the only proper defendant in an ADEA action is Sandusky's former employer, Adams County. Therefore, the defendants seek the dismissal of the individuals named in this complaint from this lawsuit. In addition, the defendants advance a fact-bound rebuttal to Sandusky's complaint, arguing that since Sandusky is incorrect as a matter of fact regarding the chronology of events set forth in his complaint, his complaint fails as a matter of law to state an ADEA claim. This motion has been fully briefed by the parties, (Docs. 4, 5 and 7), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted, in part, and denied, in part, as follows: The motion should be granted with respect to the individual defendants named in the complaint, who are not proper party-defendants in an ADEA action, but the motion should be denied in all other respects.

**II.   Discussion**

    **A.   Motion to Dismiss–Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in

4

whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

> **B.  Sandusky's Age Discrimination Claims Fail As a Matter of Law With Respect to the Individual Defendants Named in the Complaint But Disputed Material Issues of Fact Preclude Any Judgment in Favor of Sandusky's Former Employer, Adams County, at the Outset of this Litigation**

In his complaint Sandusky has claimed that his former employer, Adams County, and the individual defendants discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Sandusky has also brought a pendent state law age discrimination claim

against these defendants under the Pennsylvania Human Relations Act, (PHRA), 43 Pa.C.S. §951. Although Sandusky brings these two separate legal claims, "[w]hile the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, Harrisburg Sch. Dist. v. Pennsylvania Human Relations Comm'n, 77 Pa.Cmwlth. 594, 466 A.2d 760, 763 (1983), its courts nevertheless generally interpret the PHRA in accord with its federal counterparts; see Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir.1995) (noting that PHRA and Title VII are interpreted similarly), cert. denied, 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1049 (1996); Chmill v. City of Pittsburgh, 488 Pa. 470, 412 A.2d 860, 871 (1980) (recognizing precedents suggesting that 'the Human Relations Act should be construed in light of 'principles of fair employment law which have emerged relative to the federal [statute] ....' ') (quoting General Elec. Corp. v. PHRC, 469 Pa. 292, 365 A.2d 649, 654 (1976))." Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Therefore, we will construe both of these claims in light of the case law which has developed defining the elements of pleading and proof in an ADEA claim.

"The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir.

2001) (citing 29 U.S.C. § 623(a)(1)). In cases, such as this, where a plaintiff alleges disparate treatment under the ADEA, liability hinges on whether the plaintiff's age motivated the employer's decision and had a determinative influence on the employment decision. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). Age discrimination may be established by direct or indirect evidence. Id. (citation omitted). Under the ADEA, the parties' burdens in pleading, proving and defending claims by indirect evidence are determined by the procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).

Under the McDonnell Douglas framework, a plaintiff must initially plead and later produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a *prima facie* case of discrimination. Stanziale, 200 F.3d at 105. This test requires that a plaintiff first come forward with evidence to show: (1) the plaintiff is 40 years old or older at the time of the allegedly discriminatory action; (2) the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was replaced by another employee who was sufficiently younger so as to support an inference of discriminatory animus. Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

If a plaintiff pleads and establishes a *prima facie* case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." Stanziale, 200 F.3d at 105 (citations and internal alterations omitted). "If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id.; see also Torre, 42 F.3d at 830 (noting that to survive summary judgment, "a plaintiff may prevail 'by either (i) discrediting the [employer's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action'" (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The Third Circuit has explained what a plaintiff must show in order to discredit an employer's proffered legitimate, non-discriminatory reason for taking an adverse employment action, as follows:

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). In considering the parties' competing arguments and evidentiary support, we must also remain mindful that "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997). Thus, the legal benchmarks which govern determination of the sufficiency of an ADEA claim are often closely tied to the factual matters pleaded and proven by the parties, a fact-bound analysis which often prevents a merits-based dismissal of an ADEA claim solely on the basis of the pleadings.

Moreover, one other overarching principle defines the scope of liability under the ADEA. By its terms, this statute only extends civil liability to an "employer" for acts of age discrimination. While an employer is defined to include "a State or

political subdivision of a State," 29 U.S.C. § 630(b)(2), Hill v. Borough of Kutztown, 455 F.3d 225, 247 n.30 (3d Cir. 2006), making the county potentially liable for an ADEA claim, it is also clear that "the ADEA does not provide for individual liability. See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 610 n. 2 (7th Cir.2001); Medina v. Ramsey Steel Co., Inc., 238 F.3d 674 (5th Cir.2001); Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995) (all holding that there is no individual liability under the ADEA).  See also Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir.1997) (holding that Congress did not intend to hold individual employees liable under Title VII, which is parallel to the ADEA in many ways)." Hill v. Borough of Kutztown, 455 F.3d 225, 246 (3d Cir. 2006).  See Slater v. Susquehanna Cnty., 613 F. Supp. 2d 653, 667 (M.D. Pa. 2009) aff'd, 465 F. App'x 132 (3d Cir. 2012).

These basic legal principles control here and dictate the course we should follow with respect to this motion to dismiss.  At the outset, to the extent that Sandusky's complaint names individual county officials who were not his employer as defendants, the motion to dismiss should be granted "in reliance on this strong body of precedent," Slater v. Susquehanna Cnty., 613 F. Supp. 2d 653, 667 (M.D. Pa. 2009) aff'd, 465 F. App'x 132 (3d Cir. 2012), which holds that individual non-employer officials may not be held personally liable under the ADEA.

However, in all other respects this motion to dismiss should be denied since, fairly construed, Sandusky's complaint alleges well-pleaded facts which support an ADEA claim, and companion age discrimination claim under the PHRA.  Thus, the factual averments in Sandusky's complaint meet the elements of ADEA claim in that Sandusky has alleged facts which, in proven, could support a finding that:  (1) the plaintiff, who was born in 1956, was 40 years old or older at the time of the allegedly discriminatory action; (2) the defendant took an adverse employment action against the plaintiff, by terminating his employment; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was replaced by another employee who was 20 years his junior, and thus was sufficiently younger so as to support an inference of discriminatory animus.  <u>Smith v. City of Allentown</u>, 589 F.3d 684, 689 (3d Cir. 2009).  Thus, as a threshold matter Sandusky has met his initial burden of pleading an ADEA claim.

For their part, the defendants' motion to dismiss vigorously contests these factual claims, and provides various attachments and exhibits outside the pleadings which defendants assert rebut the factual claims made by Sandusky.  This argument, however, fails to take into account how the procedural posture of this case can affect the substantive outcome of a motion.  Thus, to the extent that this motion invites us to discount the veracity of Sandusky's well-pleaded facts based upon factual

submissions made by the defendants, submissions which entail matters outset the pleadings, at this stage of these proceedings where we are considering a motion to dismiss we should decline the defendants' invitation since the scope of our review is currently cabined by the well-pleaded facts alleged in the complaint. In short, the question of whether Sandusky can prove what he has alleged must await another day, another proceeding, and another form of motion, a motion for summary judgment in which the court may determine the legal merits of a claim based upon an assessment of the undisputed material facts in a case. It cannot, however, be decided through a motion to dismiss.

### III. Recommendation

For the forgoing reasons, IT IS RECOMMENDED THAT the defendants' motion to dismiss, (Doc. 3), be GRANTED, in part, and DENIED in part, as follows: The motion should be granted with respect to the individual defendants named in the complaint, defendants Rice, Phiel, Martin and Karsteter Qually, who are not proper party-defendants in an ADEA action, but the motion should be denied in all other respects.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making

14

a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of February, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge