## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM SCOTT SANDUSKY,** | : | **CIVIL ACTION NO. 1:13-CV-2507** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF ADAMS,** | : | |
| **PENNSYLVANIA,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Plaintiff William Scott Sandusky ("Attorney Sandusky") commenced the above-captioned action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. § 951 *et seq.* Attorney Sandusky alleges that his former employer, defendant County of Adams, Pennsylvania ("Adams County" or "the county"), unlawfully discriminated against him on the basis of age. Presently before the court is Adams County's motion (Doc. 18) for summary judgment. Also pending are two motions (Doc. 27, 29) *in limine* filed by the county. For the reasons that follow, the court will grant Adams County's motion for summary judgment.

## I.   <u>Factual Background and Procedural History</u>[1]

In the spring of 2011, Attorney Sandusky applied for a position as the Adams County Public Defender.  (<u>See</u> Doc. 19 ¶ 1; Doc. 25 ¶ 1).  He interviewed for this position in May 2011.  (Doc. 19-1, Ex. 1, Sept. 29, 2014 ("Sandusky Dep."), 13:5-9).  Adams County expressed a preference for applicants who were certified to represent defendants in capital cases, and Attorney Sandusky conveyed during the initial interview that he believed he was capable of becoming capital case certified.  (<u>Id.</u> 15:11-16:5; Doc. 19 ¶ 3; Doc. 25 ¶ 3).  The county invited Attorney Sandusky for another interview with County Manager Albert Penska ("Penska") and the three Adams County Commissioners serving at that time.  (Sandusky Dep. 17:17-20).  The county ultimately hired Kristin Rice ("Attorney Rice") for the position of Public Defender.  (<u>Id.</u> 19:6-10; Doc. 19 ¶ 4; Doc. 25 ¶ 4).  Attorney Rice previously worked as an Assistant Public Defender for the county.  (Sandusky Dep. 19:12-14).

After informing Attorney Sandusky of the hiring decision, Penska asked Attorney Sandusky whether he was interested in the vacant Assistant Public Defender position.  (<u>Id.</u> 19:12-20:1; Doc. 19 ¶ 5; Doc. 25 ¶ 5).  Attorney Sandusky expressed interest in the job, and Penska told him that the county was going to

---

[1] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  L.R. 56.1.  A party opposing a motion for summary judgment shall file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement of material facts and noting genuine issues to be tried.  <u>Id.</u>  The factual information contained herein is derived in part from the parties' statements of material facts. (Docs. 19, 25).  To the extent that facts are undisputed or supported by record evidence, the court cites directly to both parties' statements of material facts.

advertise the opening.  (Sandusky Dep. 20:5-20).  Attorney Sandusky thereafter

interviewed with Penska and Attorney Rice.  (Id. 23:18-24:9).  He was aware that the

county expected him to become capital case certified if he were selected for the

position.  (Id. 25:5-13; Doc. 19 ¶ 7; Doc. 25 ¶ 7).  Adams County ultimately hired

Attorney Sandusky as an Assistant Public Defender (Sandusky Dep. 20:5-20; Doc.

19 ¶ 8; Doc. 25 ¶ 8), and he commenced employment in late June 2011 (Sandusky

Dep. 24:1-2).  In addition to Attorney Rice, Attorney Sandusky joined fellow

Assistant Public Defender Warren Bladden ("Attorney Bladden") and intern Sean

Mott ("Attorney Mott") in the Public Defender's Office.  (See Doc. 19-2, Ex. 2, Sept.

29, 2014 ("Penska Dep."), 13:14-17, 24:15-17).

        At the commencement of Attorney Sandusky's employment, Attorney Rice

was the only member of the office who was capital case certified.  (Id. 48:16-22;

Sandusky Dep. 45:10-12).  According to Penska, the county believed that

representation by two attorneys was required or preferred in a capital matter.

(Penska Dep. 23:20-24:3, 34:18-20).  Hence, Attorney Sandusky was tasked with

becoming capital case certified.  (See Sandusky Dep. 26:14-17, 38:21-39:2).  He spent

multiple days in the York County archives obtaining documentation to support his

petition for certification.  (Doc. 19 ¶ 9; Doc. 25 ¶ 9).  A state court judge approved his

petition.  (Sandusky Dep. 28:6-10).  He and Attorney Rice also attended a continuing

legal education ("CLE") seminar in September 2011 on representing defendants in

capital cases.  (See Doc. 25 ¶ 11).

        Prior to and during Attorney Sandusky's employment, Attorney Rice

represented Christopher Johnson ("Johnson") in a capital case pending in state

court. (See Penska Dep. 17:3-18:2). During 2011, Attorney Sandusky had limited involvement with the Johnson matter. He spoke briefly with Johnson on two occasions and drafted and argued a motion requesting that the prosecutor's physician produce a medical report. (Sandusky Dep. 38:10-20; Doc. 24 ("Sandusky Aff."), ¶¶ 7, 14). He also met with a mitigation expert but did not discuss the capital case in depth with the expert. (Sandusky Aff. ¶ 8). Attorney Sandusky received medical records, a police report, and a transcript of a preliminary hearing. (Id. ¶ 11). He did not receive mitigation or ballistics-related materials or status updates on the case from Attorney Rice. (Id. ¶¶ 9-11). As of December 2011, Johnson's trial was scheduled to begin in April 2012. (Id. ¶ 12).

On December 29, 2011, Attorney Rice notified Attorney Sandusky that he would be required to handle the penalty phase of the capital case. (Sandusky Dep. 35:6-14; Sandusky Aff. ¶ 6). Attorney Sandusky responded that he could not try the penalty phase because he lacked sufficient experience and precious little time remained prior to trial. (See Sandusky Dep. 36:23-38:4). Attorney Sandusky's response upset Attorney Rice. (Id. 39:3-6, 71:15-19). Attorney Rice construed Attorney Sandusky's response as a direct refusal to try the penalty phase of the trial. (See id. 70:17-23, 72:15-73:5; Doc. 19 ¶ 14; Doc. 25 ¶ 14). Thereafter, Attorney Sandusky did not begin preparing for the trial. (See Sandusky Dep. 41:5-42:2).

Attorney Mott began working in the Public Defender's Office in April 2011 as a legal intern. (Doc. 19 ¶ 16; Doc. 25 ¶ 16). On January 3, 2012, Attorney Rice attended an Adams County Board of Commissioners meeting "to provide an office overview and present[] information on the responsibilities and caseloads of the

Public Defenders [sic] Office." (Doc. 19-4, Ex. 4). At this meeting, Attorney Rice recommended that the county hire Attorney Mott as an Assistant Public Defender to alleviate the office's workload while she worked on the capital case. (Penska Dep. 28:19-29:3, 30:10-16). The county promoted Attorney Mott to Assistant Public Defender, effective January 2, 2012. (Doc. 19-4, Ex. 4; Doc. 19 ¶ 15; Doc. 25 ¶ 15). Given his level of criminal litigation experience, Attorney Mott was not eligible for capital case certification. (See Sandusky Dep. 45:10-12; Doc. 19 ¶ 17; Doc. 25 ¶ 17). Attorney Mott was twenty-six years old in January 2012, and he had less than five years of litigation experience. (See Doc. 1 ¶ 21; Doc. 15 ¶ 21; Sandusky Dep. 44:11-24).

On January 13, 2012, Attorney Sandusky received his six-month performance appraisal. (Doc. 19 ¶ 18; Doc. 25 ¶ 18). Attorney Rice and Adams County Human Resources Director Michelle Miller ("Miller") attended the evaluation. (Doc. 19 ¶ 18; Doc. 25 ¶ 18). The appraisal form indicated that Attorney Sandusky exceeded or met expectations with respect to five performance factors, nearly met expectations with respect to three factors, and failed to meet expectations with respect to "work initiative, productivity, & results" on the purported grounds that Attorney Sandusky was uninterested in the Johnson matter and unwilling to serve as a partner on the case with Attorney Rice. (Doc. 19-5, Ex. 5 at 3-5). Attorney Rice signed the appraisal. (Id. at 8).

During the evaluation, Miller invited Attorney Sandusky to comment and to ask questions. (Sandusky Aff. ¶ 26). Attorney Sandusky took issue with certain representations in the appraisal. With respect to the assertion that he had not

shown interest in the capital case, Attorney Sandusky observed that he did not see Attorney Rice working on the case and that she had not asked him to do anything in the case.  (Sandusky Dep. 56:1-11, 64:22-25).  In response to a pointed inquiry from Attorney Rice, Attorney Sandusky expressed his view that Attorney Rice frequently arrived late to work, including to "plea days" at which members of the office would meet with clients in court to complete guilty plea colloquies.  (Id. 65:6-19, 66:22-67:10; Sandusky Aff. ¶ 20).  Attorney Sandusky also stated in response to another criticism that Attorney Rice did not appear one day for guilty pleas and that she directed her husband to substitute for her and to meet with clients.  (Doc. 19 ¶ 24; Doc. 25 ¶ 24).  According to Miller, Attorney Sandusky had an "attacking" and "argumentative" nature during the evaluation, told Attorney Rice that the capital matter was a "mess," and was unwilling to accept any criticism.  (Doc 19-8, Ex. 8, Sept. 29, 2014 ("Miller Dep."), 16:17-17:14, 20:3-9, 28:10-20).

Attorney Rice and Miller communicated with Penska following the evaluation.  (Penska Dep. 42:18-43:1).  On January 17, 2012, Penska terminated Attorney Sandusky for insubordination and unwillingness to perform assigned duties.  (Penska Dep. 44:6-11, 44:23-45:8; Doc. 19 ¶ 25; Doc. 25 ¶ 25).  Penska, Attorney Rice, and Miller recommended this action.  (Penska Dep. 46:1-16).  The Adams County Commissioners subsequently approved the separation of employment.  (Id.)  Attorney Sandusky was in his fifties at the time of his termination.  (See Sandusky Dep. 53:10-11; Doc. 1 ¶ 22; Doc. 15 ¶ 22).

Proceeding *pro se*, Attorney Sandusky commenced the instant action on October 4, 2013 against Adams County, the Adams County Commissioners serving

in 2012, and Attorney Rice.  (Doc. 1).  Defendants moved to dismiss the action for failure to state a claim upon which relief can be granted on the grounds that the individual defendants were not proper parties to an age discrimination suit and that Attorney Sandusky failed to state a valid claim for age discrimination.  (Docs. 4, 5).  In a report and recommendation dated February 19, 2014, Chief Magistrate Judge Martin C. Carlson recommended that the court grant defendants' motion with respect to the individual defendants but deny it in all other respects.  (Doc. 8).  The court adopted the report and dismissed with prejudice the claims against the Adams County Commissioners and Attorney Rice.  (Doc. 13).

On November 14, 2014, Adams County moved for summary judgment.  (Doc. 18).  The county argues, *inter alia*, that Attorney Sandusky has not established that he was replaced by a sufficiently younger employee and that Attorney Sandusky has not demonstrated that the county's reasons for terminating him were pretextual.  (Doc. 20 at 4).  Attorney Sandusky filed a brief in opposition to the motion, along with an accompanying affidavit.  (Docs. 23, 24).  The county also filed motions (Docs. 27, 29) *in limine* to preclude Attorney Sandusky from offering certain evidence regarding damages and pretext.  Adams County's motion for summary judgment has been fully briefed and is ripe for disposition.

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" if it might affect the outcome of the action under applicable law, and is

7

"genuine" only if there is a sufficient evidentiary basis that would allow a

reasonable factfinder to return a verdict for the nonmoving party.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The burden of proof is on the

nonmoving party to come forth with "affirmative evidence, beyond the allegations

of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F.

Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).  "Such affirmative evidence—regardless of whether it is direct or

circumstantial—must amount to more than a scintilla, but may amount to less (in

the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of W. Chester, 891 F.2d

458, 460-61 (3d Cir. 1989)).  This evidence must be adequate, as a matter of law, to

sustain a judgment in favor of the nonmoving party on the claims.  See Anderson,

477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-88 (1986); see also Fed. R. Civ. P. 56(a), (c), (e).  Only if this threshold is met may

the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

Attorney Sandusky advances claims for age discrimination under the ADEA

and the PHRA.  The ADEA provides that it is unlawful for an employer "to fail or

refuse to hire or to discharge any individual or otherwise discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's age."  29 U.S.C. § 623(a).  When a plaintiff

has not adduced direct evidence of age discrimination, as in the case *sub judice*,

courts in this circuit apply the three-part framework set forth in McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802-06 (1973), to ADEA claims.  See Burton v. Teleflex Inc., 707 F.3d 417, 425-26 (3d Cir. 2013).[2]  Under this framework, the plaintiff must first establish a *prima facie* case of unlawful discrimination.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate and nondiscriminatory reason for its adverse employment action.  Id.  Once the employer does so, the burden of production returns to the plaintiff, who must then show by a preponderance of the evidence that the employer's basis for the employment action was pretextual.  Id.  The burden of persuasion remains with the plaintiff throughout this framework.  Smith, 589 F.3d at 690.

Adams County contends that Attorney Sandusky failed to establish a *prima facie* case of age discrimination, that it proffered nondiscriminatory reasons for Attorney Sandusky's termination, and that Attorney Sandusky has not satisfied his burden of demonstrating pretext.  (Doc. 20 at 4-12).  The court will address these contentions *seriatim*.[3]

---

[2] The court notes that the Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . utilized in Title VII cases is appropriate in the ADEA context."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009).  The United States Court of Appeals for the Third Circuit has reasoned that the burden-shifting framework in McDonnell Douglas is consistent with Gross and properly applied in age discrimination cases.  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009).

[3] The PHRA prohibits employers from, *inter alia*, discriminating against employees on the basis of age.  43 PA. STAT. ANN. § 955(a).  Age discrimination claims under the PHRA are analyzed under the same legal standards as claims under the ADEA.  Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).  Accordingly, the court will analyze Attorney Sandusky's ADEA and PHRA claims collectively.

A.    Attorney Sandusky's *Prima Facie* Case

To establish a *prima facie* case under the ADEA, a plaintiff must demonstrate that (1) he is forty years of age or older; (2) his employer took an adverse employment action against him; (3) he was qualified for the position he held; and (4) he was ultimately replaced by a sufficiently younger employee to support an inference of discriminatory animus.  See Smith, 589 F.3d at 689-90 (citing Potence v. Hazelton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).[4]  A plaintiff's failure to raise a genuine issue of material fact with respect to any of these elements renders appropriate summary judgment for the employer.  Burton, 707 F.3d at 426.  However, the initial burden of establishing a *prima facie* case is not intended to be onerous.  Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

The parties do not contest the first three elements of Attorney Sandusky's *prima facie* case.  The record evidence establishes that Adams County terminated Attorney Sandusky from his position as Assistant Public Defender on January 17, 2012 and that Attorney Sandusky was in his fifties at the time of his termination.

---

[4] The court is mindful that the necessary *prima facie* showing under McDonnell Douglas is flexible and must be tailored to the circumstances of each case.  See Fasold v. Justice, 409 F.3d 178, 185 n.10 (3d Cir. 2005).  The fourth element of the *prima facie* case may be relaxed when, for example, a reduction in force is involved.  Torre v. Casio, Inc., 42 F.3d 825, 830-31 (3d Cir. 1994).  This court has reasoned that replacement by a younger person is not an essential element of a *prima facie* case under the ADEA.  See, e.g., Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 619-22 (M.D. Pa. 2000).  Indeed, the crux of a *prima facie* case is whether an employer terminated an employee "under circumstances that give rise to an inference of unlawful discrimination."  See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999) (quoting Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995)); see also Gupta v. Sears, Roebuck & Co., No. 07-243, 2009 WL 890585, at *20 (W.D. Pa. Mar. 26, 2009).

(Doc. 19 ¶ 25; Doc. 25 ¶ 25; Sandusky Dep. 53:10-11).[5]  In terms of his qualifications

for Assistant Public Defender, Attorney Sandusky testified that he had significant

legal experience, including nearly two years handling criminal matters as an

Assistant District Attorney.  (Sandusky Dep. 5:4-12:24).  Penska acknowledged that

the Adams County Commissioners who interviewed Attorney Sandusky considered

his candidacy for Public Defender "very favorably because he had capabilities and

experiences and also because he had the potential of being death penalty certified."

(Penska Dep. 12:9-19).[6]

With respect to the fourth element of his *prima facie* case, Attorney Sandusky

claims that Attorney Mott replaced him.  (Doc. 23 at 4-8).  He points to, *inter alia*,

Attorney Mott's promotion ten days prior to his performance evaluation and a

newspaper article dated the day of the evaluation that announced Attorney Mott's

new position at the Public Defender's Office.  (Id. at 8; Sandusky Dep. 43:9-22).

Adams County contends that Attorney Sandusky has not demonstrated that he was

replaced by a sufficient younger employee.  Observing that the county sought two

capital case certified attorneys and that Attorney Sandusky acknowledged that the

county expected him to become capital case certified as an Assistant Public

Defender, the county reasons that the *position* for which Attorney Sandusky was

hired required capital case certification.  (Doc. 20 at 5-6).  The county also points to

Attorney Sandusky's testimony that Attorney Mott "was not in a position to replace

---

[5] Attorney Sandusky avers that he was fifty-five years old on January 17,
2012.  (Doc. 23 at 4).

[6] Pennsylvania Rule of Criminal Procedure 801 governs the requirements for
participation in capital cases as retained or appointed counsel.  PA. R. CRIM. P. 801.

an attorney of [his] stature." (Id. at 6).  The parties do not dispute that Attorney

Mott was ineligible for capital case certification in January 2012.  (Doc. 19 ¶ 17; Doc.

25 ¶ 17).

The county's position is unconvincing.  Attorney Sandusky avers that the job

description for Assistant Public Defender did not identify capital case certification

as a prerequisite.  (Sandusky Aff. ¶ 1).  To be sure, the record reveals that the

county expected Attorney Sandusky to become capital case certified if he were

hired as an Assistant Public Defender.  (Sandusky Dep. 25:5-13).  That expectation

appears to have been unique to Attorney Sandusky during the time period at issue

given his potential for certification.  Indeed, none of the other Assistant Public

Defenders in the office, including a third Assistant Public Defender whom the

county hired after Attorney Sandusky's termination, were certified.  (See Penska

Dep. 47:22-49:1).  As the county acknowledges, the absence of multiple capital case

certified attorneys in the office did not prevent it from seeking outside assistance

with the Johnson matter.  (See Doc. 26 at 3).  Viewing the evidence in the light most

favorable to Attorney Sandusky, the court finds that the ostensible requirement of

capital case certification applied to Attorney Sandusky personally rather than to the

position that he held.

The record also reveals that Attorney Mott assisted with the Johnson matter,

albeit not in a capacity that required capital case certification.  (Sandusky Aff. ¶ 13).

Minutes from Board of Commissioners meetings in December 2011 indicate that

Attorney Mott's internship was extended, on the recommendation of Attorney Rice,

in connection with "capital murder case." (See Docs. 7-6, Ex. 6; 7-7, Ex. 7).  The

court interprets Attorney Sandusky's testimony that Attorney Mott was not in a position to replace someone of his "stature" as a general and quite accurate observation that he had significantly more legal experience than Attorney Mott, not that Attorney Mott was unqualified for the position of Assistant Public Defender or incapable of replacing him.

The county implies that Attorney Mott was hired as an *additional* Assistant Public Defender in light of the office's workload.  (See Doc 20 at 7; Doc. 26 at 3).  Record evidence offers support for this position.  (See Penska Dep. 28:19-29:3 (noting that Attorney Rice requested assistance with her caseload)).  Nevertheless, Attorney Sandusky's burden is not onerous at this stage, and he has adduced evidence that the county hired Attorney Mott as an Assistant Public Defender shortly before his termination.[7]  It is undisputed that Attorney Mott was in his twenties at the time.  Moreover, the record indicates that the county hired another Assistant Public Defender after Attorney Sandusky's termination.  (See Penska Dep. 47:22-48:6).[8]  This employee, according to Attorney Sandusky, was in his thirties.  (See Sandusky Dep. 53:16-22).  Notwithstanding his assertion that Attorney Mott replaced him, Attorney Sandusky testified during his deposition that the

---

[7] The fact that Attorney Mott was hired prior to Attorney Sandusky's termination does not torpedo Attorney Sandusky's *prima facie* case.  See Ashby v. Hanger Prosthetics & Orthotics, Inc., No. 02-630, 2003 WL 22797562, at *3 (E.D. Pa. Nov. 7, 2003) ("If an older employee could only be replaced by a younger person hired after his discharge, employers would be able to avoid ADEA scrutiny by hiring a younger employee shortly before the termination of an older employee.").

[8] In his opposition brief, Attorney Sandusky identifies this employee as Attorney Jason G. Pudleiner, and avers that the county hired him in March 2012. (Doc. 23 at 6).

county replaced him with younger "people" who did not have the same level of legal experience.  (Id.)  Construing the entire record in favor of Attorney Sandusky, a reasonable juror could find that the county replaced Attorney Sandusky with sufficiently younger attorneys—either Attorney Mott or the later-hired Assistant Public Defender—to support an inference of age discrimination.  Cf. Eldrup-Smith v. Sears Roebuck & Co., No. 1:12-CV-1862, 2014 WL 1344598, at *5 (M.D. Pa. Apr. 4, 2014) (finding that plaintiff satisfied the fourth element of her *prima facie* case when she was replaced by an employee more than twenty years younger); Kranch v. Tamaqua Area Sch. Dist., No. 3:08-CV-83, 2009 WL 4795563, at *5 (M.D. Pa. Dec. 7, 2009) (noting that a five-year age difference may establish an inference of age discrimination).[9]  Hence, the court concludes that Attorney Sandusky has satisfied his initial burden of demonstrating a *prima facie* case of age discrimination.

### B.   Adams County's Legitimate, Nondiscriminatory Reasons for Attorney Sandusky's Termination

At the second stage of the McDonnell Douglas framework, the burden of production shifts to the county to articulate a legitimate, nondiscriminatory basis for its decision to terminate Attorney Sandusky.  An employer satisfies this "relatively light" burden when it introduces evidence that "taken as true, would

---

[9] The county avers that the record does not establish that Attorney Mott assumed any of Attorney Sandusky's responsibilities following his departure.  (Doc. 26 at 3).  Attorney Sandusky had approximately forty-five clients in early January 2012.  (Sandusky Aff. ¶ 32).  Given the limited number of attorneys in the Public Defender's Office, a factfinder could rationally infer that Attorney Mott or the later-hired Assistant Public Defender assumed a material portion of Attorney Sandusky's caseload.

permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." <u>Fuentes</u>, 32 F.3d at 763.

In the instant matter, Penska asserted that the county terminated Attorney Sandusky for insubordination and unwillingness to perform assigned duties. (Penska Dep. 44:6-11).[10]  The county submits that Attorney Sandusky declined to handle the penalty phase of the capital case and that he improperly criticized Attorney Rice's work on the case and her hours in the office, among other things. (<u>See</u> Doc. 20 at 8-9).  When presumed true, these are proper grounds for an adverse employment action.  <u>See</u> <u>Schomburg v. Dow Jones & Co.</u>, 588 F. App'x 132, 135 (3d Cir. 2014) (nonprecedential) (refusal to accept new work assignments); <u>Bisbing v. Lehighton Ambulance Ass'n, Inc.</u>, 142 F. App'x 71, 74 (3d Cir. 2005) (nonprecedential) (insubordination to superiors); <u>Mincevich v. Bavarian Pretzel Bakery</u>, 418 F. Supp. 2d 634, 640 (M.D. Pa. 2005) (failure to fulfill employment duties).  The court finds that the county has met its burden of setting forth legitimate, nondiscriminatory reasons for its decision to terminate Attorney Sandusky.

### C.    Attorney Sandusky's Pretext Claims

At the final stage of the <u>McDonnell Douglas</u> framework, the burden of production returns to the plaintiff to demonstrate that the employer's proffered

---

[10] To the extent that the county also claims that it terminated Attorney Sandusky on the basis of certain written complaints regarding his conduct in the office (<u>see</u> Doc. 20 at 8-9), the court agrees with Attorney Sandusky that this basis is not sufficiently articulated in the record evidence (<u>see</u> Doc. 23 at 12).  The court therefore declines to consider these written complaints against Attorney Sandusky.

reasons for the adverse employment action were a pretext for discrimination.  The

plaintiff may satisfy this burden, and defeat summary judgment, by pointing to

evidence "from which a factfinder could reasonably either (1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause

of the employer's action."  Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 764).

To discredit an employer's stated reasons, the plaintiff must show such

"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in

the reasons that a reasonable juror could find them "unworthy of credence."

Fuentes, 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983

F.2d 509, 531 (3d Cir. 1992)).  That the employer's decision may have been "wrong

or mistaken" is insufficient to establish pretext.  Id.  Regardless of the manner in

which the plaintiff seeks to establish pretext, the plaintiff must show by a

preponderance of the evidence that age was the "but for" cause of the adverse

employment action.  Abels v. DISH Network Serv., LLC, 507 F. App'x 179, 183 (3d

Cir. 2012) (nonprecedential) (citing Gross, 557 U.S. at 177-78).[11]

   In the case *sub judice*, Attorney Sandusky challenges the veracity of the

county's stated reasons for dismissal.  With respect to insubordination, Attorney

---

[11] A plaintiff need not prove that age was the "sole cause" of the adverse
employment decision, but must nevertheless establish that it was a determinative
factor in the decision.  Eldrup-Smith, 2014 WL 1344598, at *6 (citing Robinson v.
City of Philadelphia, 491 F. App'x 295, 299 (3d Cir. 2012) (nonprecedential); see also
Kelly v. Moser, Patterson & Sheridan, LLP, 348 F. App'x 746, 749 (3d Cir. 2009)
(nonprecedential) ("The plaintiff must show that age was the 'but for' cause of the
adverse employment action—that age had 'a determinative influence on the
outcome.'" (quoting Gross, 557 U.S. at 176)).

Sandusky argues that Attorney Rice and Miller inaccurately represented his conduct at the evaluation and cites his affidavit in support of his contention that he was not insubordinate during the evaluation.  (See Doc. 23 at 10).  His affidavit contains no such support, and the record evidence does not cast doubt on Miller's characterization of the evaluation.  Miller testified that during his evaluation Attorney Sandusky adopted an "attacking" and "argumentative" stance toward Attorney Rice, criticized Attorney Rice's handling of the capital case as a "mess," and refused to accept negative feedback.  (Miller Dep. 16:17-17:14, 20:3-9, 28:10-20).  Miller acknowledged that merely asking questions about the basis for a negative assessment, expressing disagreement with an appraisal, or informing human resources of a concern with a supervisor's case preparation would not constitute insubordination.  (Id. 19:8-11, 24:11-18, 27:8-12).  She maintained, however, that Attorney Sandusky's conduct exceeded these proper responses and rose to the level of insubordination.  (Id. 17:3-14, 28:13-20).  Based on Attorney Sandusky's behavior during his evaluation, Miller recommended his termination.  (Id. 17:23-18:6, 26:18-21).  Attorney Sandusky does not dispute that Miller genuinely viewed his conduct as insubordinate.  Rather, he posits that the majority of Miller's recollection of the evaluation is inaccurate and false.  (Doc. 23 at 10).  Yet Attorney Sandusky fails to identify any weaknesses or inconsistencies in her testimony that would cause a reasonable factfinder to disbelieve her assessment of the evaluation.  See Campbell v. FYDA Freightliner Pittsburgh, Inc., No. 07-0245, 2008 WL 3539991, at *9 (W.D. Pa. Aug. 13, 2008) ("[T]he mere fact that [plaintiff] disagrees that her conduct amounted to insubordination is not evidence of pretext.").  Attorney

Sandusky claims—without any evidentiary support—that "Miller was doing what HR Directors do, namely support their department heads when an employee is targeted for termination by the department head."  (Doc. 23 at 10).  Such speculation is insufficient to discredit the county's first basis for termination.  Cf. Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 413 (E.D. Pa. 2000) ("Pretext cannot be established based on speculation and mere conclusory allegations."), aff'd, 29 F. App'x 100 (3d Cir. 2002).

Attorney Sandusky's attempts to discredit Adams County's other ground for termination also fail.  According to Penska, the county considered Attorney Sandusky for a position in the Public Defender's Office based on his representation that he would become capital case certified and serve as co-counsel in capital matters.  (Penska Dep. 49:2-10).  Attorney Rice commented in Attorney Sandusky's performance appraisal that "I am very concerned by what I perceive as a complete lack of interest in the Johnson case which was a major factor in bringing [Attorney Sandusky] onboard. . . .  I suggested a penalty phase/mitigation phase split, but [Attorney Sandusky] declined."  (Doc. 19-5, Ex. 5 at 5).  Penska terminated Attorney Sandusky based in part on Attorney Rice's representation that Attorney Sandusky was unwilling to accept her assignment to serve as co-counsel in the pending capital matter.  (Penska Dep. 44:23-45:8, 46:23-47:21).

Attorney Sandusky's deposition testimony and affidavit do not undermine the credibility of the county's underlying position that he was unwilling to accept Attorney Rice's assignment.  He conceded that the county expected him to become capital case certified as an Assistant Public Defender.  (Sandusky Dep. 25:5-13;

Sandusky Aff. ¶ 3).[12]  Attorney Sandusky met this expectation.  (Sandusky Dep. 28:9-12).  On December 29, 2011, Attorney Rice advised Attorney Sandusky that he would be required to try the penalty phase of the capital case.  (Id. 35:6-14; Sandusky Aff. ¶ 6).  Attorney Rice explained that she might get tired after trying the guilt phase or the jury might dislike her after that phase.  (Sandusky Dep. 39:22-40:6).  Attorney Sandusky acknowledged that a lecturer at the CLE seminar that he and Attorney Rice attended recommended a division of labor for these reasons, albeit without citing any statistics.  (See id.)  Notwithstanding his certification, Attorney Sandusky responded that he could not try the penalty phase because he did not know how to try a capital case and because, at that point in time, only three months remained until the trial.  (See id. 36:23-38:4).  He testified that his response upset Attorney Rice and gave her the impression that he had refused to try the penalty phase.  (Id. 39:3-6, 70:17-23, 71:15-19, 72:15-73:5).

Attorney Sandusky argues that Attorney Rice misrepresented Attorney Sandusky's willingness to assist with the capital case.  (Doc. 23 at 12).  Attorney Sandusky testified that he informed Attorney Rice during the December 2011 conversation that he was amenable to help with other aspects of the case or even try the guilt phase of the trial.  (Sandusky Dep. 37:6-19).  According to Penska, however, Attorney Rice relayed that Attorney Sandusky refused to assist with the capital case.  (Penska Dep. 46:23-47:6).  Miller testified that Attorney Sandusky

---

[12] Viewing the evidence in favor of Attorney Sandusky, the court assumes that the county did not convey during Attorney Sandusky's application process that he was expected or required to try a capital case.  (See Sandusky Dep. 35:18-36:2, 69:11-18).

professed during his evaluation that, given the disorganized nature of the capital matter, he could not assist Attorney Rice with the matter even if he wished to help. (Miller Dep. 16:17-17:2, 20:5-9).[13]  Viewing the evidence in favor of Attorney Sandusky, and assuming that Attorney Rice did not properly characterize Attorney Sandusky's willingness to assist with the capital case, a reasonable factfinder could not infer that the county's stated reason for termination is "unworthy of credence," especially when the uncontroverted evidence reveals that Attorney Sandusky conveyed he could not try the penalty phase as assigned.

As further evidence of pretext, Attorney Sandusky underscores the limited nature of his involvement with the capital case before December 29, 2011.  He observes, *inter alia*, that he worked on only one motion in the case, that he did not receive status reports, that he was not provided with certain information concerning the mitigation and ballistics experts, and that Attorney Rice assigned the penalty phase only three months before the trial and with knowledge that Attorney Sandusky had no prior experience with murder trials.  (Doc. 23 at 13-14). Attorney Sandusky contends that his previous degree of participation in the capital case demonstrates that Attorney Rice did not actually want him to assist with the case.  (Id. at 14).

This argument is unavailing.  As an initial matter, Attorney Sandusky's testimony that Attorney Rice preferred him to handle difficult situations contradicts

---

[13] Attorney Sandusky explicates his initial statements to Attorney Rice regarding his willingness to assist with the capital matter but does not address Miller's testimony about his subsequent statements at the January 2012 evaluation.

this conclusion.  (See Sandusky Dep. 39:17-21).  With respect to the amount of time remaining until the trial, Attorney Sandusky clarified that his concern with trying the penalty phase was less about the volume of work and more about his lack of experience with such representation.  (Id. 33:11-18).  Attorney Sandusky explained that he "had no idea how to approach [the capital case], and . . . was very concerned there was just three months to do that."  (Id. 37:11-12).  He conceded, however, that he may have been able to balance both his existing caseload and his work on the penalty phase.  (Id. 32:6-10, 33:20-22, 47:20-48:5).  If the addition of the capital trial proved too much to handle, Attorney Sandusky noted that he would have asked Attorney Rice for help with his caseload.  (Id. 33:20-22, 47:20-48:5; see also id. 67:11-18 (noting that he may have tried the case if Attorney Rice had spoken with him further)).  Importantly, Attorney Sandusky admitted that he probably would have reconsidered his stance on trying the penalty phase if he knew that Attorney Mott would be available to assist in the management of his existing caseload.  (Id. 68:25-69:7, 71:10-14).

These concessions undercut Attorney Sandusky's argument that the timing of Attorney Rice's assignment supplies evidence of pretext.  To defeat summary judgment, Attorney Sandusky must demonstrate not only that the county's decision to terminate him for unwillingness to try the penalty phase was wrong, but that it was so "plainly wrong" that it could not have been the county's actual reason for termination.  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc).  Given the record evidence that Attorney Sandusky was expected to become capital case certified as an Assistant Public Defender, obtained the relevant

certification, and, under certain circumstances, *may* have been able to prepare for the capital trial in three months' time, a reasonable factfinder could not conclude that the county's basis for terminating Attorney Sandusky was "plainly wrong." <u>Cf.</u> <u>Helfrich v. Lehigh Valley Hosp.</u>, No. 03-CV-05793, 2005 WL 670299, at *10 (E.D. Pa. Mar. 18, 2005) (citing <u>Keller</u>, 130 F.3d at 1109). That Attorney Rice's decision to assign the penalty phase to Attorney Sandusky may have been imprudent—given his inexperience and the amount of preparation time—is not enough to discredit the county's decision to terminate him. <u>See</u> <u>Fuentes</u>, 32 F.3d at 765; <u>see</u> <u>also</u> <u>Keller</u>, 130 F.3d at 1109 (noting that the proper inquiry is not whether the employer made a sound business decision, but whether the real reason is discrimination (citation omitted)).

Finally, Attorney Sandusky contends—in connection with both his *prima facie* case and his pretext claims—that Attorney Rice intended to manufacture a pretext for termination to facilitate the employment of Attorney Mott. (Doc. 23 at 6-8, 11). He claims that the Public Defender's Office had no need for a third Assistant Public Defender, and that Attorney Rice wanted to hire Attorney Mott before Attorney Sandusky's termination to ensure full staffing of the office. (<u>Id.</u> at 6, 8). According to Attorney Sandusky, the election of new Adams County Commissioners, Attorney Rice's assignment of the penalty phase in late December 2011, the promotion of Attorney Mott in early January 2012, and the January 13, 2012 evaluation were "too close in time to be coincidental." (<u>Id.</u> at 11).

Attorney Sandusky's assertions do not find adequate support in the summary judgment record. The fact that Attorney Sandusky and Attorney Bladden were

able to manage their caseloads (see Sandusky Aff. ¶¶ 31-32) does not imply that the office would not benefit from the presence of an additional Assistant Public Defender.  On January 3, 2012, Attorney Rice presented information about the caseload of the Public Defender's Office at a Board of Commissioners meeting. (Doc. 19-4, Ex. 4).  She recommended that the county hire Attorney Mott as an additional Assistant Public Defender to alleviate the office's workload in light of her involvement with the capital matter.  (Penska Dep. 28:19-29:3, 30:10-16).  The Commissioners approved her request.  (Doc. 19-4, Ex. 4).  Absent evidence of discrimination, it is not the role of this court to "sit as a super-personnel department that reexamines an entity's business decisions."  Outten v. Genesis Health Care, LLC, No. 13-4708, 2014 WL 3964918, at *11 (E.D. Pa. Aug. 12, 2014) (quoting Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995)); see also Crosby v. UPMC, No. 07-501, 2009 WL 735868, at *13 (W.D. Pa. Mar. 20, 2009) (citing Ezold, 983 F.2d at 527).  Attorney Sandusky's argument is also belied by his own testimony that there may have been work for other attorneys in the office if he had focused on the capital case.  (Sandusky Dep. 48:4-16).  He acknowledged that he likely would have reconsidered his opposition to trying the penalty phase if he knew that the county was going to hire Attorney Mott as an Assistant Public Defender. (See id. 68:25-69:7, 71:10-14).

Attorney Sandusky's evidence regarding the proximity of the events that preceded his termination fails to establish pretext.  The record reveals that Attorney Rice sought to hire Attorney Mott as an Assistant Public Defender prior to January 2012.  (See Penska Dep. 25:19-23, 28:19-29:3).  Based on the county's decision not to

promote Attorney Mott in 2011, Attorney Sandusky infers that Attorney Rice wanted to secure Attorney Mott's employment as an Assistant Public Defender before dismissing him.  (Doc. 23 at 6).  This inference is purely speculative.  Indeed, Attorney Rice's desire to promote Attorney Mott in 2011 to assist with the office's workload is consistent with her request to the new Adams County Commissioners in January 2012.  Attorney Rice's mere acquaintance with two of the new Commissioners (Sandusky Aff. ¶ 36) could not cause a reasonable factfinder to conclude that Attorney Rice's reasons for recommending Attorney Sandusky's termination were pretextual.  And with respect to the performance appraisal, Penska testified that Adams County had initiated a process of evaluating county employees after six months of employment.  (Penska Dep. 40:16-22).  Attorney Sandusky posits that the county created a "confrontational situation" to terminate his employment.  (Doc. 23 at 14).  Notwithstanding the circumstances of Attorney Sandusky's evaluation and the critical feedback he received therein, Attorney Sandusky has not succeeded in discrediting the county's decision to terminate him on the basis of his conduct during the evaluation, as explained *supra*.[14]

---

[14] Attorney Sandusky further suggests that a genuine issue of fact exists regarding whether Attorney Rice wanted to hire Attorney Sandusky or whether the 2011 Adams County Commissioners "pressured" her to agree to his employment. (Doc. 23 at 7).  Assuming *arguendo* that this issue is material to the instant pretext inquiry, Attorney Sandusky has not identified any evidence in support of the latter scenario.  The fact that the Assistant Public Defender position was advertised at the request of department heads (Sandusky Aff. ¶ 2) is hardly probative of a desire not to hire Attorney Sandusky, especially when the county advertised the same position following Attorney Sandusky's departure (see Penska Dep. 47:22-48:6).  The court notes with interest that, according to Penska, Attorney Rice recommended Attorney Sandusky for the position of Assistant Public Defender.  (Penska Dep. 15:24-16:3).

In sum, Attorney Sandusky has not adduced sufficient evidence from which a jury could reasonably disbelieve that Adams County terminated him due to insubordination at his evaluation and unwillingness to try a portion of the capital case. Attorney Sandusky offers little more than disagreement with the county's decisions and unsubstantiated beliefs about the county's actual reasons for terminating him. That is not enough to establish pretext. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 800 (3d Cir. 2003) (finding that an employee's "personal view" of his employer's explanation for declining to rehire him was insufficient to show pretext); Cooper v. PricewaterhouseCoopers, No. 07-1399, 2008 WL 4441993, at *5 (E.D. Pa. Sept. 30, 2008) (noting that an employee's "beliefs," standing alone, did not support a pretext claim).

A plaintiff may also defeat summary judgment by submitting evidence that permits a reasonable factfinder to infer that discrimination "was more likely than not a motivating or determinative cause of the employer's action." Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 764). Evidence relevant to this inquiry includes (1) whether the employer discriminated against the plaintiff in the past, (2) whether the employer has discriminated against other employees in the plaintiff's class or other protected classes, and (3) whether the employer has more favorably treated similarly situated employees who are not within the plaintiff's protected class. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998).

Attorney Sandusky has not demonstrated that his age played any role in the county's decision to terminate him.[15]  He does not, for example, identify any prior instances in which the county discriminated against him or other employees on account of age or other protected characteristics.[16]  Nor does he allege more favorable treatment of younger employees who engaged in similar conduct.  See Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (nonprecedential) (discussing factors relevant to whether employees are "similarly situated").  Rather, Attorney Sandusky testified that he had more experience than Attorney Rice and that Attorney Rice sought to hire younger employees to protect her position as Public Defender.  (Sandusky Dep. 53:23-54:19).  He surmises that Attorney Rice "was motivated to fire an experienced, older attorney who she perceived could have been a threat to her positon, which [sic] an attorney fresh out of law school would not be a threat."  (Doc. 23 at 14).[17]  Attorney Sandusky does not

---

[15] The fact that Attorney Sandusky has raised a genuine issue regarding whether a younger employee replaced him to satisfy his *prima facie* case does not, without additional evidence, show that the county's justifications for terminating him were a pretext for age discrimination.  See Cassidy v. Pocono Med. Ctr., No. 3:12-CV-1191, 2013 WL 2403572, at *8 (M.D. Pa. May 31, 2013); cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

[16] In his unsworn answers to the county's interrogatories, Attorney Sandusky states that Attorney Rice acted disrespectfully toward him on several occasions.  (Doc. 27-2, Ex. 2 ¶ 5a).  Attorney Sandusky does not clarify the nature of these disrespectful actions or suggest that they were related to his age.

[17] Attorney Sandusky does not appear to ascribe any discriminatory animus to Penska, Miller, or the Adams County Commissioners who approved his termination.

expound on this claim or marshal any evidence in support of it.  Without more, no reasonable juror could believe that Attorney Sandusky's age was a determinative or "but for" cause of Attorney Rice's recommendation to terminate his employment. Cf. Helfrich, 2005 WL 670299, at *10 ("[Plaintiff's] mere suspicion, belief or allegation that he was terminated on account of his age is not enough to establish a reasonable inference that the basis for his termination was pretextual.").[18]

Viewing the record in the light most favorable to Attorney Sandusky and considering his claims in their totality, the court concludes that Attorney Sandusky has not satisfied his burden of demonstrating that the county's reasons for its adverse employment action were pretextual.  Hence, his age discrimination claims under the ADEA and PHRA cannot survive summary judgment.

---

[18] In his interrogatory answers, Attorney Sandusky alleges that Attorney Rice encouraged employees in the office to submit complaints about him and avers that deposition testimony would corroborate this "belief."  (Doc. 27-2, Ex. 2 ¶ 5a).  No such testimony is part of the Rule 56 record.  Nevertheless, Attorney Sandusky argues that the "cat's paw" theory of discrimination permits a finding of invidious discrimination based on the submission of numerous memoranda and emails expressing grievances with Attorney Sandusky.  (Doc. 23 at 13).  The "cat's paw" theory allows a plaintiff to bring an employment discrimination claim against an employer when an employee motivated by discriminatory animus participated in the adverse employment action.  See Greenawalt v. Clarion Cnty., 459 F. App'x 165, 169 (3d Cir. 2012) (nonprecedential) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001)); see also Staub v. Proctor Hosp., 562 U.S. 411, 413, 422 (2011) (holding that an employer may be held liable for discrimination based on the discriminatory animus of a supervisor who influences the adverse employment decision when the supervisor's actions were a proximate cause of that decision).  This theory is inapposite here because Attorney Sandusky has not demonstrated, as a threshold matter, that Attorney Rice exhibited any discriminatory animus.

**IV.** **Conclusion**

For all of the foregoing reasons, the court will grant Adams County's motion for summary judgment and deny as moot its motions *in limine*.  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        July 31, 2015